*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re M. R. BLAREK, Minor.

UNPUBLISHED
April 20, 2023

No. 363202
Macomb Circuit Court
Family Division
LC No. 2021-000043-NA

Before: GARRETT, P.J., and K. F. KELLY and HOOD, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to the minor child, MRB. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On February 9, 2021, the police responded to a Hampton Inn hotel because respondent was acting inappropriately in the hotel lobby in her children's presence. When the police arrived, they found respondent unconscious and believed that respondent was having a mental breakdown. Respondent's older son, JB,[1] was found in the hotel lobby covered only with a towel, and six-month-old MRB was found alone in respondent's hotel room, lying on a bed with severe diaper rash. A half-full bottle of vodka was on one of the tables. Respondent was arrested and taken into custody. She was later admitted to Harbor Oaks Hospital where she stayed for approximately one week. Because of these events, petitioner, the Department of Health and Human Services (the "Department"), filed a petition requesting that the court exercise jurisdiction over MRB.

Respondent has a history of involvement with Child Protective Services ("CPS") for physical abuse, improper supervision, and substance abuse. Respondent also has a criminal history involving felony larceny for which she was placed on probation in 2019. She subsequently absconded from probation and was later arrested in October 2020, and also charged with driving without a license. Respondent's family expressed concerns about respondent's substance use, her

---

[1] JB's father was granted full custody of JB, and respondent's parental rights with respect to JB are not at issue in this appeal.

erratic and hostile behavior around her children, and her aggressive attitude toward her family members. Respondent did not receive proper prenatal care while pregnant with MRB, and both respondent and MRB tested positive for cocaine at MRB's birth. CPS recommended that respondent participate in preventative services, but she declined the offer.

After respondent entered a no-contest plea in April 2021, which allowed the trial court to exercise jurisdiction over MRB, respondent was provided with a treatment plan designed to address the barriers to reunification identified by the Department. Respondent was required to submit to a psychological evaluation, a substance abuse assessment, and a domestic relations assessment, and follow the recommendations made after each. Respondent was also required to submit to random drug screens as directed by the Department, attend parenting classes, participate in parenting time, provide proof of safe and suitable housing, provide proof of a legal source of income, live a lawful lifestyle, and resolve any outstanding legal issues.

In June 2022, the Department filed a supplemental petition requesting termination of respondent's parental rights, citing respondent's failure to participate in or benefit from the services and programs identified in the treatment plan. After a hearing in September 2022, the trial court found that clear and convincing evidence established grounds for termination under MCL 712A.19b(3)(c)(*i*) (conditions which led to adjudication continue to exist and are unlikely to be rectified within reasonable time) and MCL 712A.19b(3)(j) (reasonable likelihood that child will be harmed if returned to the parent). The trial court also found that termination of respondent's parental rights was in MRB's best interests. Accordingly, the court terminated respondent's parental rights to MRB, and this appeal followed.

## I. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred by finding that grounds for termination were established under MCL 712A.19b(3)(c)(*i*) and (j). We disagree.

## A. STANDARD OF REVIEW

In order to terminate an individual's parental rights, the trial court must find that at least one of the statutory grounds listed under MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's finding whether a statutory ground for termination has been proven by clear and convincing evidence. *Id*., citing MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

## B. ANALYSIS

The trial court found that termination of respondent's parental rights was justified under MCL 712A.19b(3)(c)(*i*) and (j), which permit termination of parental rights under the following circumstances:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Respondent pleaded no contest to the allegations contained in the petition and stipulated to their use to establish the factual basis for her plea. These allegations included drug use at the time of MRB's birth, JB's birth, and after respondent was arrested at the Hampton Inn. Respondent only had supervised visitation with JB, who tested positive for unprescribed methadone at birth. Respondent also admitted to having a mental breakdown at the Hampton Inn, which left her children without proper care and custody. Respondent also admitted to the allegations of erratic, aggressive, and threatening behavior around her children and her family.

Respondent was provided with a treatment plan designed to address the conditions that brought MRB into the Department's care. At the time of the termination hearing—16 months after respondent entered her plea—respondent had not rectified these conditions. Respondent participated in the psychological evaluation, but she failed to participate afterward in any meaningful mental health treatment. Respondent also failed to follow through with any of the Department's mental health referrals and continued to exhibit erratic behavior during her visits with MRB.

Respondent completed the substance abuse assessment but did not meaningfully implement any of the recommendations. She minimally complied with the Substance Abuse Support Services referral by maintaining contact with the assigned worker once a month, but over the 16-month period between the petition and termination, respondent submitted to only five drug screens. At the termination hearing, respondent denied any need for substance abuse treatment, stating that although she had been an addict years ago, she was now sober and not in need of treatment. Despite the evidence that she and MRB tested positive for cocaine at MRB's birth—a fact that respondent denied—and that respondent tested positive for amphetamines after the Hampton Inn incident, respondent continued to minimize her drug use and need for substance abuse treatment. Respondent also minimized her fiancé's drug use, explaining that he had suffered a death in the family, which caused a relapse for which he quickly sought help.

Considering this evidence and respondent's attempts to minimize the myriad issues identified in the treatment plan, the trial court did not clearly err by finding that the conditions that

led to MRB's adjudication continued to exist and were not reasonably likely to be rectified within a reasonable period of time considering the child's age.[2]

## II. BEST INTERESTS

Respondent also argues that the trial court erred by finding that termination of her parental rights was in MRB's best interests. We again disagree.

## A. STANDARD OF REVIEW

Once a statutory ground for termination has been established, the trial court must find that termination of parental rights is in the child's best interests before it may terminate an individual's parental rights. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. This Court reviews for clear error the trial court's findings regarding a child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

As explained in *In re White*, 303 Mich App at 713-714:

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [Citations omitted.]

Respondent only minimally complied with her treatment plan and failed to consistently visit with MRB. There was evidence that respondent's behavior in MRB's presence during parenting-time visits was erratic. The worker who supervised the visits and the foster care caseworker testified regarding respondent's frequent "crying spells" during visitation. The caseworker was forced to end one visit early because respondent would not end a phone call in which respondent was loudly complaining about the worker. Respondent also had to be removed from the building because of her disruptive conduct. All of this behavior occurred in MRB's presence, which for a time led to aggressive and inappropriate behavior by MRB. The foster care worker testified that she thought respondent could have benefited from parenting classes, but after

---

[2] Because we conclude that the trial court did not clearly err when it found by clear and convincing evidence that termination was proper under MCL 712A.19b(3)(c)(*i*), we need not address the trial court's other statutory basis for termination under MCL 712A.19b(3)(j). See *In re Moss*, 301 Mich App at 80.

eight referrals, respondent participated in only one session and attended only seven of the 15 classes in that session. Respondent failed to take responsibility for her mental health, substance abuse, and domestic violence issues, and she denied that events happened the way the caseworkers and other professionals described them.

MRB was enrolled in Early On[3] because she had been diagnosed with having communication, social/emotional, and cognitive issues. Respondent attended only three of MRB's Early On appointments, and she never attended any of MRB's doctor appointments or asked about MRB's well-being unless a visit had been canceled. Considering respondent's lack of participation in the treatment plan, her failure to participate in efforts to ensure MRB's well-being, and her lack of commitment to creating a bond with MRB, the trial court did not clearly err by finding that termination of respondent's parental rights was in MRB's best interests.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Kirsten Frank Kelly
/s/ Noah P. Hood

---

[3] Early On Michigan is an early intervention service designed to help infants and toddlers who have disabilities and developmental delays. The purpose of the service is to provide assistance to the children and their families to obtain social, health, and educational services to promote the children's development.